IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ABRAHIM FATA,                              :
    Plaintiff,                        :
                                      :
    v.                                :      CIVIL ACTION NO. 26-828
                                      :
JOSHUA T. YOUNG, *et al.*,                  :
    Defendants.                       :

**MEMORANDUM**

**HENRY, J.**                                                    **APRIL 8, 2026**

Plaintiff Abrahim Fata commenced this *pro se* civil action against numerous Defendants, asserting that this case arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and the Civil Rights Act of 1871, 42 U.S.C. § 1985.  (*See* ECF No. 2 ("Compl.") at 2.)  The Court has previously granted Fata leave to proceed *in forma pauperis*.  (*See* ECF No. 7.)  For the following reasons, the Court will dismiss Fata's Complaint.

**I.     FACTUAL ALLEGATIONS**[1]

Fata's allegations relate to his numerous requests for records pursuant to Pennsylvania's Right-to-Know Law ("RTKL").  From June through December 2025, Fata submitted approximately twenty-six RTKL request forms to several agencies in the Commonwealth of Pennsylvania, including the Counties of Lehigh, Monroe, Northampton, and Pike, as well as to various police departments, agencies, and judicial districts within those counties.[2]  (*See* Compl.

---

[1] The allegations set forth in this Memorandum are taken from Fata's Complaint.  (ECF No. 2.) The Court adopts the pagination supplied by the CM/ECF docketing system.  Grammar, spelling, and punctuation errors in quotes from Fata's submissions are cleaned up where necessary.

[2] Attached to Fata's Complaint is a "Comprehensive Analysis of 26 Office of Open Records (OOR) Exhibits" that indicates it was prepared with the assistance of a generative AI program on February 8, 2026.  (Compl. at 6-10.)  According to the "Executive Summary," the report "provides a multi-agency synthesis and accuracy recheck of twenty-six primary exhibits"

at 6; ECF No. 6 ("Exhibits").)  Fata names as Defendants several employees of the Pennsylvania

Office of Open Records ("OOR") including:  Joshua T. Young (Senior Deputy Chief Counsel);

Elizabeth Wagenseller (Executive Director); Kathleen Higgins (Appeals Officer); Jordan Davis

(Appeals Officer); Megan Burns (Appeals Officer); Damian DeStefano (Appeals Officer); Blake

Eilers (Appeals Officer); Erika Similo (Appeals Officer); Daneen Miller-Smith (Appeals

Officer); Kelly Isenberg (Appeals Officer); and Magdalene Zeppos-Brown (Appeals Officer).

(Compl. at 1.)  Also named as Defendants are:  Michele Burrell (Agency Open Records Officer

("AORO") for Pike County Children and Youth Services); Christine Rechner (Solicitor for Pike

County); Greg Christine (AORO for Monroe County); Sarah Murray (Deputy Solicitor for

Lehigh County); Bridget Winter (AORO for the Allentown Police Department ("APD")); Kyle

Pammer (Captain of Administration, APD); William Rozier (AORO for the Pennsylvania State

Police "PSP")); Janiel Rhoden (Deputy AORO for the PSP); and Susan A. Kopp (Open Records

Manager for the Pocono Mountain Regional Police Department).  (*Id.*)

Fata alleges that a RICO enterprise, known as the "Architecture of Record Suppression,"

is comprised of the individual Defendants "for the coordinated purpose of evidence

suppression."  (*Id.* at 2.)  He asserts that the Defendants "conducted the enterprise's affairs

through a pattern of racketeering activity to suppress records" involving his minor children.  (*Id.*)

---

regarding Fata's efforts to secure public records.  (*Id.*)  The Court has reviewed this summary.
However, the twenty-six exhibits, which total approximately 686 pages, have also been filed
with the Court.  (*See* ECF No. 6.)  Rather than relying on an AI summary, the Court has
reviewed and considered the actual exhibits.  These exhibits include OOR dockets sheets
pertaining to each of Fata's twenty-six requests, his RTKL request forms, and agency responses
from Right-to-Know officers.  (ECF No. 6.)  It appears that Fata appealed every record request to
the OOR, and documents prepared in connection with those appeals, as well as the Final
Determinations rendered by the OOR, are also included as exhibits.  (*Id.*)

Fata maintains that he had limited library access[3] and "struggle[d] to respond accurately to the hyper-technical procedural obstacles maintained by Defendants" in connection with his RTKL requests.  (*Id.*)

As a *pro se* litigant, Fata alleges several frustrations with the RTKL process.  (*Id.* at 2-3.) He claims that Defendants utilized "Clustered Response Traps" to time "extensions and denials . . . exactly at final statutory deadlines" to create "an unmanageable workload" forcing him "to formulate accurate legal responses to dozens of hyper-technical dockets within the brief 15-business-day appeal window."  (*Id.* at 2, 7.)  He asserts that the "Defendants . . . ignored the Prisoner Mailbox Rule in nine simultaneous appeals" by "labelling them 'untimely'" even though he claims to have delivered the "documents to prison authorities" in a timely fashion. (*Id.* at 3, 8.)  Fata also contends that the OOR applied "inconsistent 'sufficiency' standards," and that the release of requested documents varied between counties.[4]  (*Id.*at 3.)  He claims that the OOR "bypassed its duty under 65 P.S. § 67503(d)(2) to transfer 75% of local police cases . . . to a District Attorney" and used "procedural defaults to terminate the dockets."  (*Id.* at 3, 9.) Finally, he alleges that the "Defendants used 'undeliverable' returns from the jail . . . to secure fraudulent 'mootness' dismissals."  (*Id.*)  Throughout the Complaint, Fata references docket numbers assigned by the OOR that correspond to some of his RTKL appeals.  (*See, e.g.*, Compl. at ¶¶ 7, 9-10.)

---

[3] Since his release from Lehigh County Jail on September 25, 2025, Fata has been residing in an emergency shelter.  (Compl. at 2.)

[4] Fata avers that Pike County "released CY-47/48 forms, while Northampton and Lehigh Counties claimed identical laws (CPSL) required 100% blanket denials" for records pertaining to his minor children.  (Compl. at 3, 8.)

Attached to Fata's Complaint is a handwritten "Statement of Claim" wherein he also alleges the existence of "a conspiracy to coverup a sexual abuse on [his] two kids and to frame [him]." (*Id.* at 5.)  He contends that he's "been severely oppressed by Pennsylvania, and New Jersey societies/communities, and governments, since 2017 . . . to the extreme of [his] death, by either manipulating a fatal 'accident' or . . . to push [him] to suicide." (*Id.*)  Fata claims that the conspiracy began with "a Christian religious-based organization" that "invaded" the communities where he and his children resided, and he alleges that this organization "recruited" several relatives and government officials to form an enterprise to "oppress [him] religiously, psychologically, [and] systematically."[5]  (*Id.*)

Based on the foregoing allegations, Fata alleges civil RICO claims, asserting that Defendants concealed "investigative records," impeded "proper administration of the RTKL," and used mail and electronic databases "to secure fraudulent procedural dismissals." (*Id.* at 3, 9.) He also contends that Defendants conspired together to "hinder[] his efforts to seek legal remedies for himself and his minor children" in violation of 42 U.S.C. § 1985. (*Id.* at 3.)  Fata seeks monetary damages for "loss of litigation property," "bad faith denial of public records," and "non-compliance with the RTKL." (*Id.* at 3-4.)

---

[5] The allegations in Fata's "Statement of Claim" are repetitive to those made in Fata's prior cases. *See* Civil Action Nos. 24-2402, 24-4862, 24-6934, 24-6935, and 24-6936.  In these cases, Fata alleged that more than fifty different individuals, family members, attorneys, state and federal law enforcement agencies, and governmental entities from Pennsylvania and New Jersey had participated in a years-long conspiracy to cover up a 2017 crime inflicted on his son.  In each case, the Court dismissed Fata's conspiracy claims as factually baseless.  Fata appealed the dismissal of his Complaint in each case, and the United States Court of Appeals for the Third Circuit affirmed in all cases.

## II.    STANDARD OF REVIEW

Because Fata has been granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to screen and dismiss the Complaint if it is frivolous, malicious, fails to state a claim, or seeks relief from an immune defendant.  Section 1915(e)(2)(B)(i) requires the Court to dismiss a complaint if it is frivolous, and § 1915(e)(2)(B)(ii) requires dismissal if a complaint fails to state a claim upon which relief may be granted.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  *Brown v. City of Philadelphia*, 750 F. App'x 171, 173 (3d Cir. 2018) (*per curiam*) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).  The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation."  *Neitzke*, 490 U.S. at 325.  Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic or delusional scenarios[.]"  *Id.* at 327; *see also Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003).  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."  *Smith v. N. Cambria Police,* No. 25-1273, 2025 WL 1324070, at *1 (3d Cir. May 7, 2025) (*per curiam*) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).  A claim is legally baseless if it is "based on an indisputably meritless legal theory."  *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)).  At the screening stage, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Fata is proceeding *pro se*, the Court construes his allegations liberally.  *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

The Court must also dismiss the Complaint if it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Grp. Against Smog and Pollution, Inc. v. Shenango,*

6

*Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).  "Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte*."  *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted).

## III.    DISCUSSION

### A.    Factually Frivolous Claims

Fata contends that there is a vast conspiracy to frame him and cover up sexual abuse. (*See* Compl. at 5.)  He asserts that the conspiracy, which spans across two states, was started in 2017 by a "Christian religious-based organization" that recruited family members and government officials to oppress him "to the extreme of [his] death, by either manipulating a fatal 'accident' or 'situation'" or to commit suicide.  (*Id.*)

Fata's allegations that a multistate conspiracy has been formed to push him to suicide or otherwise cause his death are wholly incredible and lack a basis in fact.  Accordingly, the Court will dismiss any claims based on these allegations as factually baseless, without leave to amend. *See, e.g., Caterbone v. Nat'l Sec. Agency*, 698 F. App'x 678, 679 (3d Cir. 2017) (*per curiam*) (dismissing appeal as lacking an arguable basis in fact where underlying allegations were based on plaintiff's assertion that he was a "victim of U.S. sponsored mind control and cointelpro harassment program"); *Mina v. Chester County*, 679 F. App'x 192, 195 (3d Cir. 2017) (*per curiam*) (affirming dismissal of plaintiff's claims that 62 defendants had a vast conspiracy

against him spanning twenty years); *Price v. Fed. Bureau of Investigation*, No. 20-3015, 2020

WL 4368063, at *3 (E.D. Pa. July 30, 2020), *aff'd*, 845 F. App'x 106 (3d Cir. 2021) (finding

plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous law

enforcement agencies, attorneys, prison officials, and medical professionals have used

neurological and psychological technology to control the 'four basic groups of his brain and

mental functions' and "that the use of this 'technology' and 'mind control' has caused him

numerous impairments and drove him to criminal and erratic behavior"); *Jorge v. Torres*,  No.

18-14674, 2019 WL 2385942, at *3 (D.N.J. June 6, 2019) ("Plaintiff's factual allegations that the

Police are monitoring his every move and that the Police do so by telephone recruitment 'of

informants, spies, and willing constituates [sic]' is exactly the type of 'fantastic or delusional

scenario[ ]' warranting dismissal under 28 U.S.C. § 1915(e)(2)(B)(i)." (alterations in original)).

### B.     RICO Claims

Fata fails to allege a plausible civil RICO claim.  The RICO Act "makes it unlawful 'for

any person employed by or associated with any enterprise engaged in, or the activities of which

affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity.'"  *In re Ins.*

*Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)).

Section 1962(d) expands liability under the statute by making it "unlawful for any person to

conspire to violate [18 U.S.C. § 1962(c)]."  18 U.S.C. § 1962(d).

The RICO statute provides that "[a]ny person injured in his business or property by

reason of a violation of section 1962 of this chapter[, which prohibits racketeering activity,] may

sue therefor in any appropriate United States district court . . . ."  18 U.S.C. § 1964(c).  However,

"[i]n order to have standing to litigate a civil RICO claim, a plaintiff must show that [he]

suffered an injury to [his] business or property and that the injury was proximately caused by the defendant's racketeering activities." *Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*, 557 F. App'x 141, 145 (3d Cir. 2014) (*per curiam*).  Because "[i]njuries to one's business or property differ from injuries to one's person," the United States Court of Appeals for the Third Circuit "has rejected the argument that personal injuries qualify as RICO injuries to 'business or property.'" *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 483, 492 (3d Cir. 2000)).  Furthermore, RICO does not provide a cause of action where the damages alleged are "speculative." *Maio*, 221 F.3d at 495 (explaining that damages "predicated exclusively on the *possibility* that future events might occur" could not form the basis of a RICO injury).  Fata does not allege harm to a business or property[6] contemplated by RICO and only asserts personal injuries in this lawsuit.  (*See* Compl. at 3-4.).  Accordingly, the Court lacks standing over his civil RICO claim.  Because of the jurisdictional defect, the Court will dismiss this claim without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) but with no leave to amend.

## C.     Civil Rights Conspiracy Claims

Fata asserts a claim under 42 U.S.C. § 1985.  (Compl. at 1.)  Because he avers that Defendants conspired with the intent to deny him "equal protection of the laws," he appears to

---

[6] Fata avers without explanation, that he should be awarded treble damages under RICO for "loss of litigation property."  (Compl. at 3.)  To the extent Fata asserts that the denial of records somehow prevented him from pursuing "legal remedies for himself and his minor children" (*id.*), his claim is too speculative to confer RICO standing.  *See Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 229 (3d Cir. 2007) (concluding that unliquidated personal injury claims against the archdiocese by individuals claiming childhood sexual abuse were too speculative to constitute "injury to business or property" within the meaning of 28 U.S.C. § 1964(c)).

assert a claim under 42 U.S.C. § 1985(3).[7]  This section creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ."  42 U.S.C. § 1985(3).  To state a plausible claim under § 1985(3) a plaintiff must allege the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property or the deprivation of any right or privilege of a citizen of the United States.  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).  Significantly, the "language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement."), *aff'd sub nom., Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir. 1985).

---

[7] Fata also alleges a claim under 42 U.S.C. § 1985(2) (*see* Compl. at 3), but it appears that he referenced this statute in error because this section is concerned "with conspiratorial conduct that directly affects or seeks to affect parties, witnesses or grand or petit jurors."  *See Brawer v. Horowitz,* 535 F.2d 830, 840 (3d Cir. 1976).  Regardless, any claim asserted under § 1985(2) would fail for the same reasons as those asserted under § 1985(3).

Moreover, a plaintiff must allege specific facts to state a plausible § 1985(3) claim. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) ("With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals."); *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient."). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.

Fata's claims fail for several reasons. First, there is no allegation that a conspiracy was motivated by race or a class-based discriminatory animus as required by § 1985(3). Fata does not identify his race, nor does he make any allegation that race was the motivation behind the Defendants' alleged actions. Although Fata emphasizes his status as a *pro se* litigant (Compl. at 2), *pro se* status is not a protected class for purposes of stating a § 1985 claim. *See Finch v. Buechel*, No. 04-1856, 2005 WL 2807127, at *3 (W.D. Pa. Oct. 26, 2005) ("Regardless of which of these two subsections of § 1985 that she seeks to invoke, Finch cannot prevail on her claim because she only asserts "class-based invidious discrimination" as a *pro se* litigant."), *aff'd*, 188 F. App'x 139 (3d Cir. 2006); *Brik v. Brodie*, No. 23-4330, 2024 WL 1604194, at *6 (E.D.N.Y. Apr. 12, 2024) (collecting cases and stating that *pro se* status is not an "'immutable' quality beyond the class members' control"). Also, Fata asserts the existence of a conspiracy only in

11

conclusory terms and provides no facts from which a conspiratorial agreement may be inferred. *Groce v. City of Phila. L. Dep't*, No. 21-5132, 2022 WL 493418, at *7 (E.D. Pa. Feb. 17, 2022) (dismissing conspiracy claim as wholly conclusory where the plaintiff failed to alleged facts regarding the formation of a conspiracy between any Defendants or any other individuals, the period of the conspiracy, or actions taken by the alleged conspirators to achieve the alleged purpose thereof).  Fata's § 1985 claims are not plausible and will be dismissed.

### D.    Right-to-Know Law

Having reviewed the Complaint and numerous exhibits, it is apparent that Fata's claims rest upon his attempt to turn his dissatisfaction with Pennsylvania's RTKL procedures for access to records into federal RICO or constitutional claims.  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.").  To the extent that Fata seeks relief based on the denial of his requests under the RTKL, he has failed to state a claim.

"Section 1983 does not provide a cause of action for violations of state statutes."  *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (citing *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990)); *see also Breslin v. Duncannon Borough*, No. 12-360, 2018 WL 4002855, at *3 (M.D. Pa. Aug. 22, 2018) (noting that "alleged violations of Pennsylvania's [RTKL] do not give rise to a constitutional claim").  "Generally, federal district courts are barred from considering claims under the [RTKL]," as the statutory scheme provides that the state agencies and state courts are the exclusive means of review.  *See Salmond v. Williams*, No. 23-3131, 2025 WL 18096, at *2 (3d Cir. Jan. 2, 2025) (*per curiam*) ("Salmond also appears to argue that the responses to his requests for records under Pennsylvania's Right-to-Know Law by the District Attorney's Office and the Police Department violated his right to procedural due process,

and that the statute is constitutionally infirm.  The Right-to-Know Law, however, provides for judicial review in state court.  See 65 Pa. Stat. § 67.1302.(a).  Where a state has provided seemingly adequate procedural protections, a plaintiff cannot skip that process and seek relief in federal court.") (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)); *Miller v. County of Lancaster*, No. 24-5338, 2025 WL 757481, at *10 (E.D. Pa. Mar. 7, 2025) (citing *N'Jai v. Floyd*, 386 F. App'x 141, 143 (3d Cir. 2010) (*per curiam*)); *see also Miller v. Nelling*, No. 22-3329, 2023 WL 2743564, at *6 (E.D. Pa. Mar. 31, 2023) ("[T]o the extent Plaintiff challenges [a] failure to provide public records requested pursuant to the RTKL, the Court lacks jurisdiction over this claim because state courts provide the exclusive forum for litigating under that statute.").  Accordingly, any claim based on purported violations of the RTKL will be dismissed without prejudice to Fata seeking appropriate remedies under that statute in the appropriate state court, but he will not be given leave to amend such claim in this Court.

## IV.    CONCLUSION

Because Fata's claims are not plausible or frivolous, his case will be dismissed.  The civil RICO claim will be dismissed without prejudice for lack of jurisdiction, but no leave to amend will be granted because Fata cannot cure the defect with the claim.  His conspiracy allegations will be dismissed as both factually baseless and for failure to state a claim.  Any claims asserting violations of the RTKL are dismissed without prejudice for lack of subject-matter jurisdiction and without leave to amend.  *See Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 291 (3d Cir. 2023) ("[A] dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice.'" (quoting *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999))).  No leave to amend will be afforded.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002)

("[D]ismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend . . . when amendment is inequitable or futile.").